IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RICO L. GLYNN,

                    Petitioner,

          v.                              Case No. 12-3031-SAC

JAMES HEIMGARTNER, and
ATTORNEY GENERAL OF KANSAS


                    Respondents.



**MEMORANDUM AND ORDER**

This case comes before the Court on a petition for habeas corpus filed

pursuant to 28 USC § 2254 by an inmate at El Dorado Correctional Facility

who was convicted of rape, aggravated sodomy, and aggravated kidnapping.

The parties agree to the procedural history of the case and to the facts as

set forth in Respondents' brief. Accordingly, the Court adopts those facts as

correct and finds it unnecessary to set them forth herein except as

necessary to the analysis of the Petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz*

*v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004). Respondents admit that

Petitioner has exhausted his available state court remedies.

**I. AEDPA Standard**

This matter is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential

standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––, 130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either

unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## II. Issues

Petitioner alleges multiple constitutional errors during his criminal trial.

### A. Obtaining Petitioner's DNA

Petitioner first asserts that Respondents' collection of his DNA evidence violated his Fourth and Fifth Amendment rights. Petitioner asserts that the manner of collection exceeded the scope of the warrant, so the evidence should have been suppressed. Petitioner contends that the search warrant in

his home invasion case authorized only one saliva sample, but two were taken.

The facts show that after a victim positively identified Petitioner as the assailant in the home invasion case, officers got a search warrant for saliva samples then applied a buccal swab to the inside of each of Petitioner's cheeks. Petitioner's DNA matched the DNA taken from a rape location, and Petitioner was later charged with this rape case. The home invasion case and this rape case were kept together at the trial court level for control purposes because of the interrelation of motions filed in the cases, and the same judge presided over both trials.

### 1. Fourth Amendment Claim

Plaintiff claims that the manner of collection of his DNA exceeded the scope of the warrant and violated the Fourth Amendment. But Fourth Amendment claims generally may not be raised in a habeas corpus petition. In *Stone v. Powell,* 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. The Tenth Circuit has interpreted the "opportunity for full and fair consideration" to include the procedural opportunity to raise a Fourth Amendment claim, the full and fair evidentiary hearing contemplated by

*Townsend v. Sain,* 372 U.S. 293 (1963), and the state court's application of the correct and controlling constitutional standards. *See Gamble v. State of Okl.,* 583 F.2d 1161, 1164-65 (10th Cir. 1978); *Sanders v. Oliver,* 611 F.2d 804, 808 (10th Cir. 1979), *cert. denied,* 449 U.S. 827 (1980) ("'opportunity' includes procedural opportunity to raise a claim.").

Petitioner does not assert that he lacked an opportunity for a full and fair hearing on this issue before the state trial court, and the record shows that he in fact had one. *See* R. VIII, 45-52, 65-70, 77, 86-88, 113-15, 123-25. Petitioner also fully litigated this issue on appeal, both in his rape case, *State v. Glynn*, 38 Kan.App.2d 437, 455 (2007), and in his home invasion case, *State v. Glynn,* 2007 WL 1041759 at *9 (2007). *See generally Wallace v. Kato*, 549 U.S. 384 (2007) ("*Stone* requires full and fair opportunity to litigate a Fourth Amendment claim at trial and on direct review."). Further, the state court reasonably applied the correct and controlling constitutional standard. Thus, Petitioner cannot be granted federal habeas relief for any Fourth Amendment violation regarding the manner in which his DNA was obtained.

Petitioner also asserts that an evidentiary hearing is necessary because he requested a *Franks* hearing in state court but got none. Petitioner thus disagrees with the trial court's ruling that he did not meet the *Franks* standard. But "[u]nder *Stone* it is irrelevant whether the trial court was correct in finding that the *Franks* standard was not met." *McIntyre v.*

*McKune*, 2011 WL 686120 (D.Kan. 2011). *See Siripongs v. Calderon,* 35 F.3d 1308, 1321 (9th Cir. 1994), *cert. denied,* 513 U.S. 1183 (1995). A full and fair opportunity to litigate a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley,* 324 F.3d 527, 532 (7th Cir.), *cert. denied,* 540 U.S. 873 (2003).

### 2. Fifth Amendment Claim

The court next addresses Petitioner's contention that the collection of his DNA violated the 5th Amendment. He contends that in the home invasion case, police continued to question him after he had invoked his right to remain silent and his right to counsel in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Therefore, Petitioner contends, his confession and the resultant search warrant for his DNA evidence were invalid under the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States*, 371 U.S. 472 (1963).

The facts show that Petitioner initially refused to talk to police. Soon thereafter, Detective Phil Jacobs told Petitioner that he would contact the District Attorney and seek to file charges of attempted first degree murder and aggravated robbery. Petitioner then said he "didn't agree" with one of those charges, and wanted to talk. Before speaking to Petitioner, Jacobs asked him to indicate on the *Miranda* form that he would answer questions without having counsel present and Petitioner did so.

The KCOA held in Petitioner's direct appeal in this case that Petitioner's confession in the home invasion case was voluntary and uncoerced, and that obtaining Petitioner's saliva sample for DNA purposes was a separate and distinct act from the alleged improper interrogation of defendant. *Glynn*, 38 Kan. App. 2d at 444. Because the application for the search warrant had been prepared in Wichita *before* the police questioned Petitioner at Lansing, it could not have been based on anything Petitioner told the officer during his Lansing confession. *Id*. Thus no causal connection was shown between the search for Petitioner's DNA and the challenged interrogation.

The KCOA examined this same claim in the appeal in Petitioner's home invasion case and concluded that the officer

> neither promised nor threatened, but merely stated in a matter-of-fact way what his next action would be. He was not responsible for [Petitioner's] reaction to his words, and the words did not appear to be designed to elicit [Petitioner's] confession.

2007 WL 1041759, at *3.

Petitioner cites no Supreme Court authority holding that it is coercive for an officer to truthfully tell a suspect that the officer intends to seek specific charges against him based on the evidence known to the officer at the time. Rather, the Tenth Circuit has suggested there is "no Supreme Court authority suggesting that it is coercive to tell a suspect truthfully that the evidence would imply that he was guilty of a ... crime." *Davis v. Workman*, 695 F.3d 1060, 1071 (10th Cir. 2012). Thus the KCOA decision

did not unreasonably determine the facts or unreasonably apply clearly established federal law.

### B. Using Petitioner's DNA in Cold Case

Petitioner additionally claims that even if his DNA was initially obtained legally in his home invasion case, the use of that DNA in this rape case violated his constitutional rights because it was not obtained pursuant to a search warrant in this case. Respondent notes that the search warrant was for "a saliva sample" and stated that his saliva would be compared to blood taken from a knife used in a home invasion case.

Respondents admit that this claim, although "arguably" barred by *Stone v. Powell, supra*, "is a novel issue that may not fit squarely under *Stone*." Dk. 11, p. 13-14. The Court agrees. Although *Stone* has been broadly interpreted to bar all Fourth Amendment claims on habeas review, *Stone's* analysis focuses upon officer's *obtaining* evidence in an unconstitutional search or seizure, and the corresponding rationale of deterring police conduct. Here, Petitioner contends his DNA evidence, even if initially obtained constitutionally for use in another case, was used unconstitutionally in this "cold case" by matching it to the DNA sample recovered from the rape victim's truck. Petitioner contends this use constitutes a separate search unsupported by a warrant or any applicable exception, or constitutes use of a generalized warrant prohibited by the Fourth Amendment.

### 1. KCOA holding

The KCOA rejected this claim, holding that only one search occurred; that any expectation of privacy in a lawfully obtained sample is not objectively reasonable by society's standards; that once a DNA profile is lawfully obtained a defendant has no privacy interest which persists in either the sample or the profile; and that DNA results are like fingerprints which may lawfully be maintained on file by law enforcement authorities for use in further investigations. *Glynn*, 38 Kan. App.2d at 448-50. In reaching its holding, the KCOA found no controlling cases in Kansas, so relied on a Hawaiian case which held that lawfully obtained DNA may be tested and compared innumerable times to determine the identity of a perpetrator of a crime without violating the donor's constitutional right to privacy. *State v. Hauge,* 103 Hawaii 38, 79 P.3d 131 (2003).

### 2. Analysis

In a habeas case, relief may not be granted to a state prisoner based on a legal error unless that error was contrary to or an unreasonable application of clearly established federal law. That law must be clearly established as of " 'the time the state court render[ed] its decision,' " *Cullen v. Pinholster*, 563 U.S. ————, ————, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011).

Petitioner invokes well-established Supreme Court precedent that warrantless searches are per se unreasonable, subject to only a few

exceptions, *Katz v. United States*, 389 U.S. 347 (1967), and that search warrants must particularly describe the place to be searched and the persons or things to be seized, *Marron v. U.S.*, 275 U.S. 192, 196 (1927). But framing Supreme Court precedents at such a high level of generality would permit courts to "transform even the most imaginative extension of existing case law into "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. §2254(d)(1). *Nevada, et al., Petitioners v. Calvin O'Neil Jackson,* ___ U.S. ___ (June 3, 2013).

Supreme Court decisions applying the Fourth Amendment do not point in a single direction, and some support the proposition that DNA profiling of arrestees does not violate the Fourth Amendment. *See e.g.*, *Samson* v. *California*, 547 U. S. 843, 855, n. 4 (2006) (where persons are in valid police custody for a serious offense supported by probable cause, the need for a warrant is greatly diminished and the search is analyzed by reference to "reasonableness, not individualized suspicion"); *Wyoming* v. *Houghton*, 526 U. S. 295, 300 (1999) (reasonableness is determined by weighing "the promotion of legitimate governmental interests" against "the degree to which [the search] intrudes upon an individual's privacy..."); *Winston* v. *Lee*, 470 U.S. 753, 760 (1985) (taking a buccal swab constitutes a search but involves only a minimal intrusion); *County of Riverside* v. *McLaughlin*, 500 U. S. 44, 58 (1991) (fingerprinting is a natural part of "the administrative steps incident to arrest.").

The Supreme Court recently ruled that the DNA profiling of an arrestee, as here, does not violate the Fourth Amendment. *Maryland v. King*, No. 12-207, __ U.S. __ , 81 U.S.L.W. 4343 (June 3, 2013). Its discussion of the issue demonstrates that the Supreme Court law applicable to this case was not clearly established as of the date of the KCOA's opinion. *Id*. Because Petitioner fails to show an unreasonable application of clearly established federal law, no basis for habeas relief appears.

## C. Venue

Petitioner next claims that the state trial court's refusal to change venue denied him a fair trial. The KCOA rejected Petitioner's claim that he could not obtain a fair and impartial trial in Sedgwick County because of publicity surrounding his trial and sentencing in the home invasion case. Specifically, Petitioner notes that Wichita has only one paper, which is available online; that the paper published pictures and stories about him which "made [him] out to be the poster child for people who commit crimes while released on parole" and linked him to notorious murderers; and that during deliberations the jury asked questions before recessing for the evening, but returned a guilty verdict in the morning without having had their questions answered because that morning's paper revealed Petitioner's then-recent previous conviction and the length of his sentence. Dk. 6, p. 12-13.

### 1. Standard of Review

Tenth Circuit precedent is inconsistent regarding the standard of review to apply in a habeas case when reviewing a state court's decision regarding jury impartiality. *Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009). *Compare Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006) (using manifest error standard), *with Hale v. Gibson*, 227 F.3d 1298, 1331 (10th Cir. 2000) (applying abuse of discretion standard). Because the Court believes that the same result would follow from use of either standard, it does not speculate on which standard may be appropriate.

### 2. Presumed Prejudice

The Constitution requires that criminal defendants be tried by impartial juries. The Sixth Amendment, applied to the states by the Fourteenth Amendment, ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right to a … trial[ ] by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. "The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Due process may require a change of venue because of "presumed prejudice" flowing from pretrial publicity in two related contexts: 1) "where pretrial publicity is so pervasive and prejudicial that a court could not expect to find an unbiased jury pool in the community"; and 2) "where the effect of pretrial publicity manifested at jury selection is substantial enough to indicate the

existence of prejudice within the jury pool." *Goss*, 439 F.3d at 628; *Gardner*, 568 F.3d at 888.

The high standard for presuming prejudice from pretrial publicity is rarely met.

> [I]n order for the reviewing court to reach a presumption that inflammatory pretrial publicity so permeated the community as to render impossible the seating of an impartial jury, the court must find that the publicity in essence displaced the judicial process, thereby denying the defendant his constitutional right to a fair trial.

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998). It is not enough for a defendant to show juror exposure to news accounts. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Rather, the defendant must show a "trial atmosphere that had been utterly corrupted by press coverage." *Goss*, 439 F.3d at 631, quoting *Murphy*, 421 U.S. at 798. The facts do not approach this threshold. Petitioner has failed to show that the effect of pretrial publicity was substantial enough to warrant a presumption of prejudice.

### 3. Actual Prejudice

Where prejudice cannot be presumed, actual prejudice must be established. *Skilling v. United States*, ––– U.S. ––––, 130 S.Ct. 2896, 2917, 177 L.Ed.2d 619 (2010).

> Actual prejudice "manifest[s] at jury selection" when voir dire reveals "the effect of pretrial publicity ... is so substantial as to taint the entire jury pool." *Goss*, 439 F.3d at 628. To establish actual prejudice, the party seeking a change of venue must demonstrate "the actual existence of [ ] an opinion in the mind of the juror as will raise the presumption of partiality ." *Murphy*, 421 U.S. at 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (internal quotation marks omitted) (quoting *Irvin*, 366 U.S. at 723, 81 S.Ct. 1639, 6 L.Ed.2d 751). In cases of actual

prejudice, "the voir dire testimony and the record of publicity [ ] [must] reveal the kind of wave of public passion that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Patton v. Yount*, 467 U.S. 1025, 1040, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

*House v. Hatch*, 527 F.3d 1010, 1024 (10th Cir. 2008).

The KCOA found no actual prejudice to Petitioner, stating:

> The record does not support Glynn's allegations. A jury was selected without difficulty or knowledge of the case. The jury was correctly admonished to not consider any outside information. After the jury announced it had reached a verdict on the morning after the case had been submitted, defense counsel expressed concern about possible media prejudice. The trial court apparently did visit with the jurors and stated, "They were all unfamiliar with Rico Glynn and expressed great surprise at his previous record and why it wasn't a part of the trial."
> The record shows no possibility of prejudice. The trial court did not abuse its discretion in denying the change of venue motions.

*Glynn*, 38 Kan. App.2d at 451.

This conclusion was a reasonable application of the law. "It is not required ... that the jurors be totally ignorant of the facts and issues involved.... It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961).

The Court has independently reviewed the voir dire of the prospective jurors, and finds that in response to the Court's inquiry about media, no juror recalled reading Petitioner's name or hearing anything about him, R. Vol. 6, p. 4. Additionally, the Prosecutor's inquiry about media coverage was extensive:

Judge mentioned this a little bit, I want to go into it briefly again, there has (sic) been things written and media accounts of Mr. Glynn. That is a fact. Is anybody familiar with TV accounts, radio accounts or newspaper accounts of Mr. Glynn? Anybody just going back in their memory, remember hearing something or reading something about Mr. Glynn? Nobody's indicating any responses to the last couple of questions that I asked.

Let me ask this then, if there – we have told you, both the Judge and I, have told you that there have been media accounts dealing with Mr. Glynn, would the fact that media accounts have covered Mr. Glynn, just knowing that fact, would that effect anybody's abilities to be fair and impartial in this case? Nobody's indicating that it would.

And I'll ask it another way, too, so we're sure. Would the fact that the media has shown an interest in Mr. Glynn, would that effect (sic) your ability to listen to this case and make a decision based solely on the facts and the evidence of this case? Nobody's indicating that it would be a problem for them.

I will say this about the media. I hope there's nobody who works for the Eagle or anything in here, but they don't often get it right, okay. That might be a surprise to people. And it's not necessarily their fault, they don't just always have all the information.

We do not go and open up our files to the media and say here, come take a look. We like to try cases in court, not in media – in the – out there in the newspaper world and TV world. And they decide what they cover and what they don't cover. So again, I'm going to ask, any problem with any media accounts that would effect (sic) your ability to give Mr. Glynn a fair trial? Anybody have any problems whatsoever relating to media accounts? Nobody's indicating that they do.

R. Vol. 6, p. 67-69. Petitioner's counsel also asked the potential jurors about media coverage. *See e.g., id*, p. 100-101.

The record additionally reflects that the jury asked three questions before recessing at 6:30 p.m. on August 10. *See* R. Vol. 10, p. 3. The Court responded to each of those questions before sending the jurors home, telling them that some testimony would be read back in the morning, that some requested information would not be provided because it was not within the evidence in the case, and that the jury would be permitted to view the

videotape in the morning. R. Vol. 6, p. 203-04. Before dismissing the jury that evening, the Court admonished them not to discuss the case with anyone, not to permit anyone to talk to them about the case, and not to "listen, read or watch any media accounts of the happenings here at the courthouse." *Id.*, p. 205. Defense counsel then requested: "Because the newspaper was here, I anticipate there may be an article, so they should be admonished specifically for that, as well." *Id.* The court replied:

> Yeah. I think I said don't listen, read or watch any media accounts of the happenings here at the courthouse. The gentleman with Wichita Eagle was here and I'm sure there will be a story tomorrow morning. Don't read that. It's kind of interesting if you save those articles or have someone save those for you and read them after the case is over, you can compare what you heard in court to what hits the paper. Sometimes it's interesting. That's all I'll say. But don't read anything. ...The jury is excused.

R. Vol. 8, p. 205-06.

The next morning, the jury deliberated for 19 minutes before informing the Court it had reached a verdict. The jury had not heard the readback it requested and had not seen the video the Judge said they could see. When the Court informed counsel that a verdict had been reached, Petitioner's counsel voiced his concern that the verdict had been influenced by an article about Petitioner on the front page of that morning's paper, stating he was a parole absconder and mentioning his prior conviction for attempted murder. R. Vol. 9, p. 2. The Prosecutor clarified that the article was not on the front page of the paper but on the local and state section's

front page on the bottom of the fold, and stated that in his experience it was not unusual for a jury to think things through overnight then reach a verdict quickly the next morning. The Judge stated he had not seen the paper, but agreed that in his experience the timing was not unusual. The Judge stated, "I will visit with this jury after the fact and I will inquire. If, in fact, I find that (sic) anything out of the ordinary I would advise counsel immediately and certainly a motion can be filed that way." *Id*, p. 4-5. After taking the verdict the Judge released the jury, said they were free to talk to anybody they wanted to about the case, and told them he would come visit with them in about two minutes. *Id,* p. 8.

Petitioner's counsel subsequently filed a motion for acquittal or new trial based on the publicity about his client. At oral argument of that motion, both counsel acknowledged that the Court had spoken to the jury about that issue, after the verdict. But the Court had not advised counsel of anything "out of the ordinary." The Prosecutor stated that he had also spoken to the jury and that "none of them indicated that they read any articles" and that they "were very shocked and surprised when they heard about his prior conviction." R. Vol. 10, p. 2. Petitioner's counsel had the same opportunity to speak to the jurors, but offered no evidence to show that any juror had violated the Court's admonition or had seen any publicity about his client. His motion was thus denied.

Given this record of the facts, the Court finds no manifest error or abuse of discretion in the state court's refusal to change venue.

### D. Multiplicity

Petitioner claims that his sentences for aggravated kidnapping, rape, and sodomy are multiplicitous or otherwise violate the constitution. "Multiplicity is the charging of a single offense in several counts of a complaint or information." *State v. Robbins,* 272 Kan. 158, 182 (2001). Multiplicity must be considered because "it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution…" *Id.*

The KCOA found the multiplicity claim to be legally unfounded, stating:

> Glynn's argument that the crimes of aggravated kidnapping, rape, and aggravated sodomy are multiplicitous is based on his contention that they arise out of a single act of violence. Any such argument has been abrogated by our Supreme Court decisions in *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), and *State v. Patten*, 280 Kan. 385, 122 P.3d 350 (2005) which have held the test to determine multiplicity is whether each offense requires proof of an element not necessary to prove the other offenses. If this is the case, the charges stemming from a single act are not multiplicitous.
> Glynn's counsel candidly admits in his brief that if a strict element test is used, the three convictions are not multiplicitous. When we properly apply the tests of *Schoonover* and *Patten*, there is no multiplicity in this case. Glynn's multiplicity arguments have no merit.

*Id*. at 451. It then found that each offense required proof of an element not necessary to prove the other offenses - a finding Petitioner does not challenge. *See Glynn*, 38 Kan. App.2d at 451.

The decision of the KCOA rejecting Petitioner's multiplicity claim under the elements test was neither contrary to nor involved an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Instead, the state court's decision was in accordance with the long-established Supreme Court precedent, which was cited in the *Schoonover* opinion the KCOA relied on. See *Schoonover,* 281 Kan. at 466–67 (citing the *Blockburger* or the elements test, which provides: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not. [Citation omitted.]" 284 U.S. at 304, 52 S.Ct. 180.) *See also Brown v. Ohio,* 432 U.S. 161, 166 (1977) (finding the test emphasizes the elements of the two crimes); *United States v. Dixon,* 509 U.S. 688, 696 (1993) (stating "The same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution.").

### E. Use of Juvenile Convictions in Sentencing

Petitioner next contends that using his prior juvenile adjudications to enhance his sentence violates *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Both of those cases approved, however, the judge's use of prior convictions as a sentence-

enhancing factor. "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added); *see Blakely*, 124 S.Ct. at 2536

The sole legal issue raised is whether juvenile adjudications should be equated with convictions, for sentencing purposes. That issue has not been decided by the Supreme Court, but the Kansas Supreme Court has ruled that juvenile adjudications count as prior convictions for purposes of *Apprendi. See State v. Hitt,* 273 Kan. 224, 236 (2002).

Similarly, the Tenth Circuit has ruled in unpublished decisions that given the narrow standard of review in habeas cases, enhancement of a petitioner's sentence based on prior juvenile convictions is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See Harris v. Roberts*, 485 Fed.Appx. 927 (10th Cir. 2012); *Gardner v. McKune*, 242 Fed.Appx. 594 (10th Cir. 2007). This Court agrees.

### F. Counting of Other Prior Convictions in Sentencing

Petitioner also contends that the counting of his prior criminal convictions to enhance his sentence violates Kansas law. Specifically, Petitioner claims that pursuant to K.S.A. § 21-4710, three prior juvenile convictions should have been grouped and scored as one prior felony for purposes of determining his criminal history.

This claim was never raised before the state courts, so it is procedurally defaulted. Dk. 11, p. 23. But even if it were not defaulted, this claim would rest entirely on an alleged violation of state law. A federal habeas court does not correct errors of state law, *Estelle,* 502 U.S. at 67-68, and is bound by a state court's interpretation of its own law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2006). Thus "claims of state law violations are not cognizable in a federal habeas action." *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).

### G. Effective Assistance of Counsel

Petitioner claims that he was denied his Sixth Amendment right to effective assistance of trial counsel. Alleged errors of trial counsel include the following: 1) not objecting to the state's using a copy of a warrant instead of the original; 2) not objecting to the state's using his second DNA swab, which had been obtained without probable cause or warrant; and 3) not arguing that the aggravated kidnapping charge was jurisdictionally defective because the complaint listed rape as its bodily harm element, which is multiplicitous of the rape charge. Petitioner additionally faults his appellate counsel for not asserting error in the state's use of a copy of a warrant instead of the original. Dk. 1, p. 14-15.

The Court first examines whether Petitioner adequately raised these claims in State court or, instead, procedurally defaulted them. The state court found Petitioner's claim of ineffective assistance of counsel to be

conclusory and insufficient. *Glynn*, 2011 WL 2795775 at *5. The KCOA noted that Petitioner raised his claims of ineffective assistance of counsel only incidentally in his appeal from the denial of his K.S.A. 60-1507 petition, and apparently only in the context of excusing his failure to raise in the district court his defaulted claim regarding the admission of DNA evidence. *Glynn*, 2011 WL 2795775 at *5 ("In one sentence, [Petitioner] suggests both his trial counsel and appellate counsel were ineffective for failing to properly challenge the DNA search . . ."). Accordingly, these claims are procedurally defaulted. *See United States v. Flood*, ___ F.3d ___ No. 12-4094 (May 9, 2013).

Alternatively, even if the Court considered the merits of the claims, Petitioner would not be entitled to federal habeas relief. To prevail on a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland,* 466 U.S. at 700. In reviewing for deficient performance, a trial court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* at 689. A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Petitioner must show that

counsels' decision was "completely unreasonable, not merely wrong." *Boyd v. Ward,* 179 F.3d 904, 914 (10th Cir. 1999). But [w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter,* ––– U.S. ––––, –––– –, 131 S.Ct. 770, 788 (2011).

When the basis for the ineffective assistance claim is the failure to raise an issue, the court looks to the merits of the omitted issue. *United States v. Orange,* 447 F.3d 792, 796 (10th Cir. 2006). Counsel's failure to raise a meritless issue is not prejudicial, so cannot constitute ineffective assistance. *Id.* The Court's discussion above of the issues related to DNA profiling and to multiplicity demonstrates their lack of merit. Further, Plaintiff has not shown either deficient performance or prejudice by counsel's failure to object to the state's using a copy, instead of the original, of the warrant. Trial counsel did challenge the search warrant, and introducing a copy of the warrant rather than the original had no substantive impact on Petitioner's case. Petitioner also errs in asserting that a Kansas judge has no authority to authorize execution of a search warrant which was issued in another county. *See* K.S.A. § 22-2505 ("A search warrant shall be issued in duplicate and shall be directed for execution to all law enforcement officers of the state ...") Petitioner's claims lack merit.

To the extent any omitted issue may have merit, Petitioner must also demonstrate that the challenged action could not be considered sound trial strategy. *Strickland,* 466 U.S. at 688–89. This has not been done. For the multiple reasons set forth above, Petitioner's allegations of ineffective assistance of counsel fail.

### H. Sufficiency of the Evidence

Petitioner questions the sufficiency of the evidence to find him guilty of attempted kidnapping, rape and aggravated criminal sodomy. Dk. 1, p. 3-4. But this statement is conclusory and is unsupported by facts, so the Court need not address it. *See generally Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (the court must accept well-pleaded facts, but such "facts" do not include conclusory allegations).

But even if the Court reached the merits of this argument, Petitioner would not prevail. The constitutional standard to be applied to this claim is whether, based on the trial record, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This is the same standard applied by the KCOA, which found "no merit" to this argument. *See Glynn*, 38 Kan. App.2d at 451-52. The Supreme Court in *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, ___U.S. __, 132 S.Ct. 2, 3–4, 181 L.Ed.2d 311 (2011). To obtain federal habeas relief, it must be shown

that a state court decision rejecting a sufficiency of the evidence claim was objectively unreasonable. *Id.* at 4. The Petitioner has made no such showing in this case.

## III. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005) *Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk. 1, 6) is denied.

Dated this 5th day of June, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge